IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DENNIS CAMPBELL,

     Plaintiff,

v.

AIVA GLOBAL, INC., a Florida Profit
Corporation, JAMES MULLER, an
individual, and MARIA SHELTON, an
individual,

     Defendants.

Case No. 8:24-cv-02862

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff DENNIS CAMPBELL ("Plaintiff" or "Campbell") sues Defendants, AIVA GLOBAL, INC. ("AIVA"), JAMES MULLER ("Muller"), and MARIA SHELTON ("Shelton") (AIVA, Muller, and Shelton collectively referred to herein as "Defendants"; each, a "Defendants") and states as follows:

### CAUSES OF ACTION

1. This is an action brought for under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C.§ 201, et. seq. (FLSA) for failure to pay minimum and overtime wages and under Florida common law for breach of contract, tortious interference with a contractual relationship, and for breach of fiduciary duties.

### PARTIES

2. Plaintiff is an individual and currently resides in Pinellas County, Florida and at all material times for the purposes of this Complaint was employed by AIVA.

3.      AIVA is a Florida profit corporation formed on or around November 27, 2023 with a principal address at 9100 Conroy Windermere Rd. Ste 200, Windermere, FL 34786.

4.      James Muller is and was at all material times for the purposes of this Complaint a shareholder as well as the President and a Director of AIVA. He is domiciled in the State of Florida.

5.      Maria Shelton is and was at all material times for the purposes of this Complaint a shareholder as well as the CEO and a Director of AIVA. he is domiciled in the State of Pennsylvania.

## JURISDICTION AND VENUE

6.      Subject matter Jurisdiction is proper in this Court under 28 U.S.C. §§ 1331 and 29 U.S.C. §216 (b) because this action involves a federal question under the Fair Labor Standards Act.  Jurisdiction over the state law claims set forth herein is proper pursuant to this Court's supplemental jurisdiction under 28 U.S.C. § 1367.

7.      Personal jurisdiction and venue are proper in the Tampa Division, Florida because Plaintiff resides in and contracted with Defendants in Pinellas County, FL; Plaintiff performed all or most of his employment contract in Pinellas County, FL; the Defendants conduct business in and maintains minimum contracts in Pinellas County, FL; the effects of the Defendants' tortious conduct, which occurred in Florida, targeted Plaintiff in his home county of Pinellas; and the events giving rise to Plaintiff's claims predominantly occurred in Pinellas County.

8.     All conditions precedent to maintaining this action have been performed, have occurred, have been excused, have been waived, or are futile.

## FLSA COVERAGE

9.     Defendant AIVA is an artificial intelligence technology startup. The company has succeeded in acquiring and developing innovative AI technologies with applications for consumer, business, and government clients.

10.     As described further below, Plaintiff became employed by AIVA as its Vice President.

11.     At all times relevant, Defendant AIVA has annual gross revenues of at least $500,000 in sales or business done in the calendar year in which Plaintiff was employed.

12.     At all times relevant, Defendant AIVA employed two or more individuals who, in the course and scope of their employment, handled goods or materials that were manufactured outside of the state and moved through interstate commerce.

13.     Moreover, Plaintiff's work and job duties for Defendant AIVA regularly involved engaging in interstate commerce by, *inter alia*, regularly making telephone calls to persons located in other states, travel to other states, and engaging in negotiations and solicitations for investment funds and capital to persons in other states, which efforts resulted in the transfer of substantial sums of capital into Defendant AIVA, which is a Florida corporation, from out of state.

14.    At all times material hereto, Defendant Muller was an "employer" of Plaintiff within the meaning of the FLSA, 29 U.S.C. § 203.

15.    Defendant Muller exercised complete dominion and control over employee wages, hours, and working conditions including those of Plaintiff.

16.    Defendant Muller devised and implemented all employee pay policies of the company including those directly affecting Plaintiff.

17.    Though Plaintiff, based on the terms of his employment contract, would ordinarily be was an FLSA-exempt employee, Defendants AIVA and Muller failed to qualify for the exemption as to Plaintiff because it never actually paid any of Plaintiff's salary or other compensation—such compensation was "deferred" but never paid. Accordingly, Plaintiff was, at all relevant times, a non-exempt employee entitled to payment of at least the federal minimum wage for all regular hours worked.

18.    As a non-exempt employee, Plaintiff was also entitled to payment of one and one half times Plaintiff's effective hourly rate for all hours worked in excess of forty (40) in a workweek.

## GENERAL ALLEGATIONS

### _Plaintiff, along with Muller, founds AIVA._

19.    Plaintiff along with Muller conceived of AIVA as a business venture and founded AIVA with the goal of it holding two related subsidiaries for medical and security applications, respectively, with the eventual goal of an initial public offering (IPO), merger, or sale.

20.    Plaintiff built websites for the companies and began the groundwork for raising initial capital along with other essential tasks for starting up the enterprise.

21.    On or around November 27, 2023, AIVA was formed by filing articles of organization with the Florida Secretary of State, Division of Corporation with Plaintiff, Muller, and Shelton as the three original founders.

*__AIVA awards founder's shares and resolves to contract with Plaintiff for employment.__*

22.    On or around November 28, 2023, AIVA held its organizational meeting where a number of resolutions were made, including in pertinent part the following:

a.    That Muller would be a Director and Chairman of the Board of Directors, as well as the President and Secretary, and be awarded 5,000,000 shares of Series "A" Convertible Preferred Stock, which would translate to 50,000,000 common shares;

b.    That Shelton would be a Director and CEO and be awarded 3,750,000 shares of Series "A" Convertible Preferred Stock, which would translate to 37,500,000 common shares;

c.    That Plaintiff would be Vice President and, through his company PGC Investments LLC ("PGC"), be awarded 1,250,000 shares of Series "A" Convertible Preferred Stock, which would translate to 12,500,000 in common shares. See attached **Exhibit 1** Stock Certificate

d.    That AIVA would place 2,390,000 shares of Series "A" Convertible Preferred Stock "for future distribution upon achievement of certain corporate milestones", of which 1,912,000 shares would be distributed equally to Plaintiff

through PGC and four other shareholders (i.e., 382,400 shares to Plaintiff through PGC) in the event the recipient "shall have minimum continued service/employment of 24 months or less than 24 months at the Board of Directors discretion, as approved by James Muller."

e.    That AIVA would issue warrants pursuant to the terms of the employment contracts for Muller, Plaintiff, and Cisco Garcia who performed IT services.

23.    On or around January 5, 2024, Plaintiff was awarded 1,250,000 shares of Series "A" convertible preferred stock through his company PGC Investments LLC by stock certificate executed by Muller as President of AIVA. See attached **Exhibit 1** Stock Certificate.

### *AIVA formally contracts with Plaintiff for employment as its Vice President*

24.    On or around February 1, 2024 Plaintiff was awarded an employment contract as Vice President of AIVA (the "Employment Contract"). Both Muller and Plaintiff had similar contracts as founding shareholders who were also employees of AIVA.

25.    Plaintiff's Employment Contract is attached hereto as **Exhibit 2**.

26.    The Contract was for a term of three years beginning February 1, 2024 and terminating on January 31, 2027, with automatically renewal provisions for successive two-year terms unless either party gave notice of the intent not to renew.

27.    The Contract included the following pertinent compensation terms:

a.      Monthly salary of $20,000.00, deferred until AIVA had a minimum of $5,000,000.00 in cash on hand (Section 4.01);

b.      Bonuses set forth in Section 5.01, including a $50,000.00 bonus upon completion of a computing system cluster and $100,000.00 upon deployment of said system.

c.      One month of vacation time annually, which could be converted to a pro-rata payment or carried into the subsequent year (Section 6.01);

d.      Fourteen days per year of sick leave which could be converted to a pro-rata payment or accumulated from year-to-year up to a total of twenty-eight days (Section 6.02).

e.      Automobile Allowance of $800 per month, or a leased vehicle of up to $80,000 in value (Section 6.03);

f.      Full medical, hospital, dental, and eye care insurance coverages and reimbursement of all related expenses for Plaintiff and his family (Section 6.05);

g.      A life insurance policy of $500,000.00 with Plaintiff's designee as the beneficiary (Section 6.06(a));

h.      Warrants to purchase AIVA's common stock at a strike price of $2.00 per share in increments of 2,000,000 on completion of the aforementioned computer cluster system and 5,000,000 additional warrants once the system is deployed, with an option to issue the shares to a person other than Plaintiff himself (such as through PGC, which was designated to hold Plaintiff's Series "A" shares).

28.    Plaintiff's employment under the Contract was not terminable at will: it was terminable only for cause, which was defined as willful breach or habitual neglect of duties under the Contract, or the commission of "such acts of dishonesty, fraud, misrepresentation, or other acts of moral turpitude as would prevent the effective performance of his duties" (Section 8.01(a)). In the event AIVA elected to terminate for cause, it was required to give written notice of the termination, including the specific grounds for the termination, which "shall be supported by a statement of all relevant facts" (Sections 8.01(b), (c)).

29.    In the event Plaintiff was terminated without cause, AIVA was contractually obligated to pay Plaintiff "an amount equal to four years of his then current annual salary plus the amount of bonuses and stock awards he has received in the preceding 12 months" (Section 8.05).

30.    The above-referenced terms of Plaintiff's Contract contained an implied covenant of good faith and fair dealing, including in regard to any discretion AIVA and its Board had in making determination as to whether Plaintiff performed his duties in accordance with the Contract or if conduct of Plaintiff met the requirements for a termination "for cause" under the Contract.

***Plaintiff performs his duties Vice President to the satisfaction of the Board, as evidenced by the success of AIVA in raising large amounts of capital in such a short period of time.***

31.    Plaintiff, as part of his employment, reported to the Board of Directors comprising Muller and Shelton. Neither provided him with a specific set of work tasks or job requirements. Instead, Plaintiff's primary duty was to utilize his network of

contacts for the purpose of raising capital for the startup. He satisfactorily performed his duties and successfully raised capital from the first investor in May of 2024. When he spoke with Muller about AIVA's and his (i.e., Plaintiff's) performance, Muller shared nothing but positive feedback on a near daily basis, with AIVA being on a fast-track to become a multi-billion dollar company.

32.    Defendants never at any point in Plaintiff's employment with AIVA ever reprimanded him for performance, nor was he provided notice of performance deficiencies or given a performance review of any kind. Meanwhile, AIVA continued to exponentially increase its capitalization and share values.

### *AIVA, at the direction of Muller and Shelton, terminates Plaintiff in breach of the Contract.*

33.    On or around August 21, 2024, AIVA, through Muller, sent Plaintiff the termination letter attached hereto as **Exhibit 3** (the "Termination Letter"). The Termination Letter claims that the Board of Directors held a meeting on August 15, 2024 determining that "there is cause for dismissal and the board is now exercising that contractual right." The Termination Letter furth stats that, as of August 20, 2024, Plaintiff was officially removed as Vice President, may no longer claim association with AIVA, and is required to return, among other "material", advanced copies of share certificates in his possession.

34.    The Termination Letter failed to specify any grounds whatsoever for the termination for cause, nor did it provide a statement of any relevant facts supporting a

cause determination, much less the "statement of all relevant facts" required by Section 8.01(c) of the Contract.

35.    In a phone call between Plaintiff and Muller in September 2024, Muller claimed that the termination was in fact the result of restructuring. Under the Employment Contract, restructuring does not satisfy the definition of cause for the purposes of termination. Nonetheless, AIVA completely failed to honor any of the severance provisions in the Contract concerning termination for a reason other than cause.

36.    Plaintiff was not paid any of his deferred salary despite all criteria for payment being met, and Plaintiff was not even paid the minimum wage for each hour he worked with AIVA—he was paid no compensation at all other than the initial founder's stock that preceded the formation of the Contract and was not a wage for employment.

37.    Prior to Defendants' termination of Plaintiff, Defendants had sought for AIVA to engage in an IPO, merger, or acquisition by another company.

38.    After inducing Plaintiff to leverage his network of contacts and bring capital opportunities to AIVA, Muller and Shelton were motivated by their own self-interest in maximizing their respective share values to cut Plaintiff out of AIVA, causes him to not be paid any compensation, and prevent the vesting and exercise of the various equity and compensation awards entitled to him under the Contract and by prior resolution of Defendants. Muller and Shelton conspired to achieve these ends

through by effectuating the termination of Plaintiff for cause in bad faith in abuse of their status as directors and officers of AIVA.

39.    Defendants—in particular Muller and Shelton—knew there was no good-faith basis to terminate Plaintiff for cause and did so in bad faith and for an improper purpose. Had Defendants not acted in bad faith in furtherance of Muller's and Shelton's self-interested and malicious motives, Plaintiff would have and should have received the full benefit of his Contract and prior equity awards, either through performance through the initial and subsequent terms of the Contract or, at a minimum, through the severance protections in the event of death, a change of control, or a termination for reason other than cause. Instead, Defendants have failed to honor the severance provisions of the Contract or the expectancy of equity awards to be granted upon continued service by proceeding to terminate Plaintiff for causes in bad faith without out any stated basis or factual support for the decision.

40.    Plaintiff committed no act or omissions that gave rise or would have given rise to a basis for termination of the Contract for cause.

41.    AIVA has failed to perform its contractual obligations under the Contract by terminating Plaintiff for cause in bad faith, failing to provide adequate notice of termination, failing to pay Plaintiff's earned and accrued compensation, and failing to satisfy the severance payment conditions required in the event of a termination for a reason other than cause.

42.    Muller and Shelton tortiously interfered with Plaintiff's Contract by abusing their positions as directors and officers to effectuate the above-referenced

breaches by AIVA for self-interested reasons that conflict with the best interests of AIVA and its shareholders.

43.    As a result of Defendants' wrongful conduct, Plaintiff has incurred and will continue to incur damages in the way of lost pay, benefits, and stock and stock warrants.

44.    Plaintiff has had to retain the undersigned counsel to bring the instant action and will incur attorney's fees for said representation.

## COUNT I
### (Failure to Pay Minimum Wages in violation of the FLSA, 29 U.S.C. Section 206) As to Defendants AIVA and Muller

45.    Plaintiff realleges and adopts, as if fully set forth in Count I, the allegations in paragraphs 1 through 44.

46.    The FLSA requires that every covered employer shall pay each of their non-exempt employees the applicable minimum wage. 29 U.S.C. § 206(a).

47.    During the relevant time period, Plaintiff was a non-exempt employee under the FLSA and was therefore entitled to payment of at least the federal minimum wage for each regular hour worked in a workweek.

48.    For multiple workweeks, Defendants willfully failed to compensate Plaintiff at an effective hourly wage which was at least equal to the federal minimum wage.

49.    Defendants owe Plaintiff unpaid federal minimum wages plus an additional amount in the way of liquidated damages equal to the unpaid minimum wages.

WHEREFORE, Plaintiff demands judgment against Defendants AIVA and Muller, jointly and severally, for unpaid minimum wages plus an equal amount in the way of liquidated damages, prejudgment interest together with the costs of suit, reasonable attorney's fees (pursuant to § 216(b) of the FLSA), and such other and further relief that the Court deems just and proper.

## COUNT II
*(Failure to Pay Overtime Wages in violation of the FLSA, 29 U.S.C. Section 207)*
*As to Defendants AIVA and Muller*

50.     Plaintiff realleges and adopts, as if fully set forth in Count II, the allegations in paragraphs 1 through 44.

51.     During the relevant time period, Plaintiff was a non-exempt employee under the FLSA and was therefore entitled to overtime pay at time and one-half Plaintiff's regular rate of pay for all hours worked in excess of forty (40) in a workweek.

52.     During the relevant time period, Defendants AIVA and Muller routinely required Plaintiff to work in excess of forty (40) hours in a workweek.

53.     In violation of the FLSA, Defendants AIVA and Muller willfully failed to pay Plaintiff time and one-half the effective hourly, regular rate of pay for overtime hours worked.

54.     As a direct result of Defendants AIVA and Muller's violation of the FLSA, Plaintiff has suffered damages in the way of unpaid overtime compensation.

55.     Defendants did not make a good faith effort to comply with the FLSA with respect to its compensation of Plaintiff.

56.    Plaintiff is entitled to recover from Defendants AIVA and Muller the unpaid overtime compensation, and an additional equal amount as liquidated damages, prejudgment interest, and reasonable attorneys' fees and costs pursuant to 29 U.S.C. §216(b).

WHEREFORE, Plaintiff demands judgment against Defendants AIVA and Muller, jointly and severally, for unpaid overtime compensation, statutory liquidated damages, prejudgment interest together with the costs of suit and reasonable attorney's fees (pursuant to § 216(b) of the FLSA), and such other and further relief that the Court deems just and proper.

## COUNT III
*(Breach of Contract—Failure to Pay Severance)*
*As to Defendant AIVA*

57.    Plaintiff realleges and adopts, as if fully set forth in Count III, the allegations in paragraphs 1 through 44.

58.    Pursuant to the Contract, Defendant AIVA was contractually obligated to pay Plaintiff a severance if it terminated his employment without cause.

59.    The severance included payments of "an amount equal to four years of [Plaintiff's] then current annual salary plus the amount of bonuses and stock awards he has received in the preceding 12 months." See Contract at Section 8.05.

60.    Plaintiff satisfied all conditions precedent to receipt of the contractually owed severance compensation.

61.    Defendant AIVA's failure to pay the severance constitutes a breach of contract for which Plaintiff has been damaged. Additionally, had Defendant AIVA

not proceeded with its bad-faith termination of Plaintiff, Plaintiff would have continued to be employed and would have fully vested and earned the stock warrants described Paragraphs 13(d) and 18(h) along with the bonuses described in Paragraphs 18(b) to the extent they had not already accrued.

62.    Because the severance constituted earned employment compensation, Plaintiff is entitled to a recovery of attorney's fees and costs pursuant to Fla. Stat. § 448.08.

WHEREFORE, Plaintiff demands judgment against Defendant AIVA for breach of contract damages, plus prejudgment interest together with the costs of suit and reasonable attorney's fees pursuant to Fla. Stat. § 448.08 and the Contract, and such other and further relief that the Court deems just and proper.

## COUNT IV
*(Breach of Contract—Failure to Pay Accrued Compensation for Period Prior to Termination)*
*As to Defendant AIVA*

63.    Plaintiff realleges and adopts, as if fully set forth in Count IV, the allegations in paragraphs 1 through 44.

64.    Pursuant to the Contract, Defendant AIVA was contractually obligated to pay Plaintiff compensation for his services, including:

a.    Monthly salary of $20,000.00, deferred until AIVA had a minimum of $5,000,000.00 in cash on hand (Section 4.01);

b.     Bonuses set forth in Section 5.01, including a $50,000.00 bonus upon completion of a computing system cluster and $100,000.00 upon deployment of said system.

c.     One month of vacation time annually, which could be converted to a pro-rata payment or carried into the subsequent year and for which AIVA had no policy calling for forfeiture upon termination (Section 6.01);

d.     Fourteen days per year of sick leave which could be converted to a pro-rata payment or accumulated from year-to-year up to a total of twenty-eight days and for which AIVA had no policy calling for forfeiture upon termination (Section 6.02).

e.     Automobile Allowance of $800 per month, or a leased vehicle of up to $80,000 in value (Section 6.03);

f.     Warrants to purchase AIVA's common stock at a strike price of $2.00 per share in increments of 2,000,000 on completion of the aforementioned computer cluster system and 5,000,000 additional warrants once the system is deployed, with an option to issue the shares to a person other than Plaintiff himself (such as through PGC, which was designated to hold Plaintiff's Series "A" shares).

65.     Plaintiff satisfied all conditions precedent to receipt of the contractually owed reimbursement.

66.     Defendant AIVA's failure to pay the accrued compensation constitutes a breach of contract for which Plaintiff has been damaged.

67.    Because the promised pay was part of Plaintiff's earned employment compensation, Plaintiff is entitled to a recovery of attorney's fees and costs pursuant to Fla. Stat. § 448.08.

WHEREFORE, Plaintiff demands judgment against Defendant AIVA for breach of contract damages, plus prejudgment interest together with the costs of suit and reasonable attorney's fees pursuant to Fla. Stat. § 448.08 and the Contract, and such other and further relief that the Court deems just and proper.

## COUNT V
### *(Tortious Interference with Contract)*
### *As to Defendant Muller*

68.    Plaintiff realleges and adopts, as if fully set forth in Count V, the allegations in paragraphs 1 through 44.

69.    A contractual relationship existed between Plaintiff and Defendant AIVA under which Plaintiff had and still has legal rights.

70.    Defendant Muller was aware of the contractual relationship.

71.    Defendant Muller orchestrated the bad-faith termination of Plaintiff's employment and the breach of AIVA's obligations to Plaintiff described in Counts III and IV along with the facts common to all claims.

72.    Defendant Muller intentionally interfered with the contractual relationship without justification or privilege.

73.    Defendant Muller's interference with the relationship was driven by Muller's own ulterior personal motives that conflicted with those of AIVA and its shareholders.

74.     Defendant Muller's acts in interfering with the relationship were performed as a third-party to the relationship and not performed with any good-faith belief that termination of Plaintiff for cause or any other reason would benefit AIVA.

75.     As a result of Defendant Muller's tortious interference, Plaintiff has been damaged in the way of unpaid compensation, including but not limited to denied contractual severance pay, benefits, and denied stock warrants (i.e., options), as well as non-economic losses including the emotional distress and mental anguish Plaintiff suffered because of the interference.

76.     Defendant Muller's tortious interference was done with actual knowledge of the wrongfulness of the conduct and the high probability that injury or damage to the Plaintiff would result. Despite that knowledge, Defendant Muller intentionally pursued that course of conduct, resulting in injury or damage to Plaintiff. In the alternative, Defendant Muller's interference was so reckless or wanting in care that it constituted a conscious disregard or indifference to Plaintiff's rights. Accordingly, an award of punitive damages is appropriate.

WHEREFORE, Plaintiff demands judgment against Defendant Muller for economic damages, compensatory damages, punitive damages, plus prejudgment interest together with the costs of suit and reasonable attorney's fees pursuant to Fla. Stat. § 448.08 and the Contract, and such other and further relief that the Court deems just and proper.

### COUNT VI
### *(Tortious Interference with Contract)*
### *As to Defendant Shelton*

77.    Plaintiff realleges and adopts, as if fully set forth in Count VI, the allegations in paragraphs 1 through 44.

78.    A contractual relationship existed between Plaintiff and Defendant AIVA under which Plaintiff had and still has legal rights.

79.    Defendant Shelton was aware of the contractual relationship.

80.    Defendant Shelton orchestrated the bad-faith termination of Plaintiff's employment and the breach of AIVA's obligations to Plaintiff described in Counts III and IV along with the facts common to all claims.

81.    Defendant Shelton intentionally interfered with the contractual relationship without justification or privilege.

82.    Defendant Shelton's interference with the relationship was driven by Shelton's own ulterior personal motives that conflicted with those of AIVA and its shareholders.

83.    Defendant Shelton's acts in interfering with the relationship were performed as a third-party to the relationship and not performed with any good-faith belief that termination of Plaintiff for cause or any other reason would benefit AIVA.

84.    As a result of Defendant Shelton's tortious interference, Plaintiff has been damaged in the way of unpaid compensation, including but not limited to denied contractual severance pay, benefits, and denied stock warrants (i.e., options), as well

CALCIANO PIERRO, PLLC

as non-economic losses including the emotional distress and mental anguish Plaintiff suffered because of the interference.

85.    Defendant Shelton's tortious interference was done with actual knowledge of the wrongfulness of the conduct and the high probability that injury or damage to the Plaintiff would result. Despite that knowledge, Defendant Shelton intentionally pursued that course of conduct, resulting in injury or damage to Plaintiff. In the alternative, Defendant Shelton's interference was so reckless or wanting in care that it constituted a conscious disregard or indifference to Plaintiff's rights. Accordingly, an award of punitive damages is appropriate.

WHEREFORE, Plaintiff demands judgment against Defendant Shelton for economic damages, compensatory damages, punitive damages, plus prejudgment interest together with the costs of suit and reasonable attorney's fees pursuant to Fla. Stat. § 448.08 and the Contract, and such other and further relief that the Court deems just and proper.

## COUNT VII
### *(Breach of Fiduciary Duties)*
### *As to Defendant Muller Directly*

86.    Plaintiff realleges and adopts, as if fully set forth in Count VII, the allegations in paragraphs 1 through 44.

87.    Defendant Muller, by virtue of his role as a director, officer, and controlling shareholder of AIVA, owed duties to Plaintiff in his capacity as a shareholder, including of loyalty and of care. As part of these duties, Muller was

Defendant obligated to act in good faith and in the best interest of AIVA and its shareholders.

88.     Defendant Muller breached the above-referenced duties to Plaintiff by abusing his positions as director, officer, and controlling shareholder to orchestrate the bad-faith termination of Plaintiff's employment and the breach of AIVA's obligations to Plaintiff described in Counts III and IV along with the facts common to all claims.

89.     The above-described injury to Plaintiff was not solely in his capacity as an employee because Plaintiff's founder's stock and other equity compensation terms contained contingencies that required Plaintiff to be employed. Plaintiff's employment was attendant to his role as a founding shareholder, and the good-faith performance of Plaintiff's employment terms by AIVA, as directed through Muller and Shelton, was intertwined with, and a material aspect of, Plaintiff's employment with AIVA.

90.     As a result of Defendant Muller's breach of fiduciary duty, Plaintiff has been directly damaged in the way of unpaid compensation, including but not limited to denied contractual severance pay, benefits, and denied stock warrants (i.e., options), as well as non-economic losses including the emotional distress and mental anguish Plaintiff suffered because of the breach of fiduciary duties.

91.     Defendant Muller's breach of fiduciary duties was done with actual knowledge of the wrongfulness of the conduct and the high probability that injury or damage to the Plaintiff would result. Despite that knowledge, Defendant Muller intentionally pursued that course of conduct, resulting in injury or damage to Plaintiff. In the alternative, Defendant Muller's breach was so reckless or wanting in care that

it constituted a conscious disregard or indifference to Plaintiff's rights. Accordingly, an award of punitive damages is appropriate.

WHEREFORE, Plaintiff demands judgment against Defendant Muller for economic damages, compensatory damages, punitive damages, plus prejudgment interest together with the costs of suit and reasonable attorney's fees pursuant to Fla. Stat. § 448.08 and the Contract, and such other and further relief that the Court deems just and proper.

## COUNT VIII
### *(Breach of Fiduciary Duties)*
### *As to Defendant Shelton*

92.    Plaintiff realleges and adopts, as if fully set forth in Count VII, the allegations in paragraphs 1 through 44.

93.    Defendant Shelton, by virtue of her role as a director, officer, and controlling shareholder of AIVA, owed duties to Plaintiff in her capacity as a shareholder, including of loyalty and of care. As part of these duties, Shelton was Defendant obligated to act in good faith and in the best interest of AIVA and its shareholders.

94.    Defendant Shelton breached the above-referenced duties to Plaintiff by abusing her positions as director, officer, and controlling shareholder to orchestrate the bad-faith termination of Plaintiff's employment and the breach of AIVA's obligations to Plaintiff described in Counts III and IV along with the facts common to all claims.

95.    The above-described injury to Plaintiff was not solely in his capacity as an employee because Plaintiff's founder's stock and other equity compensation terms contained contingencies that required Plaintiff to be employed. Plaintiff's employment was attendant to his role as a founding shareholder, and the good-faith performance of Plaintiff's employment terms by AIVA, as directed through Muller and Shelton, was intertwined with, and a material aspect of, Plaintiff's employment with AIVA.

96.    As a result of Defendant Shelton's breach of fiduciary duty, Plaintiff has been directly damaged in the way of unpaid compensation, including but not limited to denied contractual severance pay, benefits, and denied stock warrants (i.e., options), as well as non-economic losses including the emotional distress and mental anguish Plaintiff suffered because of the breach of fiduciary duties.

97.    Defendant Shelton's breach of fiduciary duties was done with actual knowledge of the wrongfulness of the conduct and the high probability that injury or damage to the Plaintiff would result. Despite that knowledge, Defendant Shelton intentionally pursued that course of conduct, resulting in injury or damage to Plaintiff. In the alternative, Defendant Shelton's breach was so reckless or wanting in care that it constituted a conscious disregard or indifference to Plaintiff's rights. Accordingly, an award of punitive damages is appropriate.

WHEREFORE, Plaintiff demands judgment against Defendant Shelton for economic damages, compensatory damages, punitive damages, plus prejudgment interest together with the costs of suit and reasonable attorney's fees pursuant to Fla.

Stat. § 448.08 and the Contract, and such other and further relief that the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff respectfully demands a trial by jury as to all issues triable as of right.

Dated this 11ᵗʰ day of December 2024.         Respectfully submitted,

*s/ Brian Calciano*
R. MICHAEL PIERRO, JR.
Florida Bar No. 0013023
BRIAN CALCIANO
Florida Bar No. 108879
*Counsel for Plaintiff*

**CALCIANO PIERRO, PLLC**
146 Second Street North – Suite 304
St. Petersburg, Florida 33701
(727) 217-5400
Primary:   mike@flemploymentlaw.com
               brian@flemploymentlaw.com
Secondary: tracy@flemploymentlaw.com